UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:10-CV-186-BR

| MARY D. GIBBS, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| DAVID SMITHERMAN, Individually and in his Official Capacity as Interim County Manager of Hyde County, North Carolina; and SHARON SPENCER, GEORGE THOMAS DAVIS, DARLENE STYRON, ANSON BYRD, and KEN COLLIER, Individually and in their Official Capacities as Present or Former Members of the Board of Commissioners of Hyde County, North Carolina, | ) ) ) ) ) ) ) ) ) ) ) ) | ORDER |
| Defendants. | ) | |

This matter is before the court on the following motions: (1) the 13 March 2012 motion to dismiss (DE # 22) filed by defendants David Smitherman, Sharon Spencer, George Thomas Davis, Darlene Styron, Anson Byrd, and Ken Collier ("defendants" or "named defendants"); (2) defendants' 13 March 2012 motion for summary judgment (DE # 24); (3) defendants' 24 April 2012 motion to strike (DE # 39); (4) defendants' 29 May 2012 motion to strike (DE # 50); and the 27 March 2012 motion to substitute party defendant (DE # 30) filed by plaintiff Mary D. Gibbs ("plaintiff"). The motions are ripe for disposition.

## I. BACKGROUND

Plaintiff is African-American, and she was 61 years old at the time that she filed her complaint in this action. (Compl., DE # 1, ¶¶ 5-6.) Plaintiff began working in the Tax Office of Hyde County, North Carolina ("the County" or "Hyde County") on 19 October 1977. (Id. ¶ 7.)

She was the only African-American employee of Hyde County government who held an office or "white-collar" job. (Id. ¶ 12.) As of June 2010, plaintiff was one of three full-time employees in the Hyde County Tax Office. The three employees were (1) plaintiff, who served in the position of Tax Collections Technician; (2) Sue Gurganus ("Gurganus"), who served in the position of Assistant Tax Assessment Technician; and (3) Linda Basnight ("Basnight"), who served in the position of Tax Administrator and supervised plaintiff and Gurganus.[1] (D. Smitherman Aff., DE # 24-1, ¶ 7; S. Gurganus Aff., DE # 24-3, ¶ 3; Pl.'s Dep., DE # 24-4, at 109:23-110:17; 111:15-20.)

Plaintiff and Gurganus had different job responsibilities. (Id.) In the position of Tax Collections Technician, plaintiff's primary duties included collecting property taxes, preparing electronic records of collections, and preparing annual reports of property tax collections. (D. Smitherman Aff., DE # 24-1, ¶ 7.) She also was responsible for a limited amount of field work in real estate property appraisals which essentially involved accompanying contracted appraisers who were valuing the real property. (Id.) Gurganus, as Assistant Tax Assessment Technician, assisted with the assessment and billing of real estate, personal property, and motor vehicles. (S. Gurganus Aff., DE # 24-3, ¶ 3.) She also assisted plaintiff with over-the-counter tax collections. (Id.)

Defendant David Smitherman ("Smitherman") was hired as the interim County Manager on 12 May 2010. (D. Smitherman Aff., DE # 24-1, ¶¶ 1-2.) Soon after his arrival, Smitherman undertook the task of a county-wide reduction in force for budgetary purposes. (Id. ¶¶ 4-6.) When Smitherman looked at the Tax Office, he realized that the duties performed by plaintiff

---

[1] A fourth employee, Justin Gibbs, split his responsibilities between the Tax Office and another department. (D. Smitherman Dep., DE # 24-5, at 28:18-29:3.)

and Gurganus could be combined into one position. (Id. ¶ 8.) Smitherman then created a new position in the Tax Office with the title "Tax Clerk" that combined plaintiff's and Gurganus's responsibilities. (Id.; Compl., DE # 1, ¶ 13.) Both women were given the opportunity to apply for the new position, and both of them submitted applications and interviewed for the job. (D. Smitherman Aff., DE # 24-1, ¶ 8; S. Gurganus Aff., DE # 24-3, ¶ 6; Pl.'s Dep., DE # 24-4, at 36:7-12.) Plaintiff and Gurganus were the only two individuals who applied for the new Tax Clerk position. (D. Smitherman Aff., DE # 24-1, ¶ 8; C. Gibbs Aff., DE # 24-2, ¶ 14.)

On 1 June 2010, all retirement-eligible employees of Hyde County government, including plaintiff, were given the opportunity to take early retirement. (Compl., DE # 1, ¶ 17; D. Smitherman Dep., DE # 24-5, at 61:4-7.) Plaintiff declined to make the election for early retirement prior to the 15 June 2010 deadline. (Compl., DE # 1, ¶ 17; D. Smitherman Aff., DE # 24-1, ¶ 11; Pl.'s Dep., DE # 24-4, at 44:4-11.) Plaintiff's employment was terminated the following day, 16 June 2010, as part of the reduction in force. (Compl., DE # 1, ¶ 17; D. Smitherman Aff., DE # 24-1, ¶ 13.) A total of eight Hyde County employees, including plaintiff and Gurganus, were terminated as a result of the reduction in force. (C. Gibbs Aff., DE # 24-2, ¶ 4; S. Gurganus Aff., DE # 24-3, ¶ 5.)

Subsequent to her termination on 16 June 2010, plaintiff asked whether she could still receive the benefit of the early retirement plan even though she had missed the election deadline. (D. Smitherman Aff., DE # 24-1, ¶ 11; D. Smitherman Dep., DE # 24-5, at 42:24-43:6; Pl.'s Dep., DE # 24-4, at 45:8-24; 56:12-22.) The Hyde County Board of Commissioners granted plaintiff an additional opportunity to take early retirement, and plaintiff accepted the Early Retirement and Incentive Plan on 24 June 2010. (D. Smitherman Aff., DE # 24-1, ¶ 11 & Ex. E;

Pl.'s Dep., DE # 24-4, at 66:21-68:13.) Gurganus was ultimately hired back as the new Tax Clerk. (Compl., DE # 1, ¶ 16; C. Gibbs Aff., DE # 24-2, ¶ 14; S. Gurganus Aff., DE # 24-3, ¶ 7.)

On or about 30 July 2010, plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Mot. Dismiss, Ex. A, DE # 22-1.) Plaintiff commenced this action on 15 December 2010. In her complaint, plaintiff alleges that she was discriminated against on the basis of her race and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiff also alleges that she was discharged in retaliation for opposing an unlawful employment practice, *i.e.*, age discrimination.

## II. DISCUSSION

A.  Motion to Substitute Party Defendant

On 27 March 2012, plaintiff filed a motion to dismiss the named defendants and substitute Hyde County as the defendant in this action. Defendants filed a response on 10 April 2012. Although plaintiff has brought her employment claims against the named defendants, it is clear that she was an employee of the County (see Compl., DE # 1, ¶ 8), and she has acknowledged that "Hyde County, not the individual defendants, should have been sued." (Mem. Opp'n Mot. Dismiss, DE # 29, at 7; see also Mot. Substitute, DE # 30.)

"[A] suit against a defendant in his official capacity means that the plaintiff seeks recovery from the entity of which the public servant defendant is an agent." Reid v. Town of Madison, 527 S.E.2d 87, 89 (N.C. Ct. App. 2000) (citation and internal quotation marks omitted); see also Mullis v. Sechrest, 495 S.E.2d 721, 725 (N.C. 1998) ("[O]fficial-capacity suits are merely another way of pleading an action against the governmental entity.") Thus, plaintiff's

4

claims against the named defendants in their official capacities are effectively claims against Hyde County.[2]

The court agrees with plaintiff that the proposed substitution of Hyde County as the defendant in this action should be allowed "for the purpose of aiding both justice to the parties and efficiency to the proceedings . . . ." (Mem. Opp'n Mot. Dismiss, DE # 29, at 7.) Furthermore, defendants have not identified any prejudice or other disadvantage that they will suffer if the motion is allowed. Thus, for good cause shown, plaintiff's motion to substitute will be granted, and Hyde County will now be the only defendant in this action.

B.     Motion to Dismiss

It is initially contended in the motion to dismiss that all of the claims that were brought against the originally-named defendants in their individual capacities should be dismissed because there is no individual liability under Title VII or the ADEA. The court need not reach this part of the motion to dismiss on its merits in light of the court's decision to substitute Hyde County as the defendant in this action.

It is also argued that plaintiff's race and age discrimination claims should be dismissed to the extent that they are based on events that occurred in 2008 because they are time-barred. In her complaint, plaintiff alleges that "some of [her] duties and titles were taken away from her in the year 2008, and she was denied periodic raises in pay that similarly situated employees

---

[2] The court notes that the claims brought against the members of the Hyde County Board of Commissioners in their official capacities are improper because the Board is not an entity that is capable of being sued under North Carolina law. See Avery v. Cnty. of Burke, 660 F.2d 111, 113-14 (4th Cir. 1981) (noting that state law dictates whether a governmental agency has the capacity to be sued in federal court); Craig v. Cnty. of Chatham, 545 S.E.2d 455, 456 (N.C. Ct. App. 2001) (noting that the county's Board of Health and Board of Commissioners "are not entities capable of being sued"), aff'd in part, rev'd in part on other grounds, 565 S.E.2d 172 (N.C. 2002); Piland v. Hertford Cnty. Bd. of Comm'rs, 539 S.E.2d 669, 671 (N.C. Ct. App. 2000) (noting that county Board of Commissioners was not a proper party to be sued).

received, and which she should have received, had pay been fairly administered without regard to race and age." (Compl., DE # 1, ¶ 11.)

Under Title VII and the ADEA, "a plaintiff can only seek redress for discriminatory acts that occurred within 180 days prior to the filing of the EEOC charge." Barbier v. Durham Cnty. Bd. of Educ., 225 F. Supp. 2d 617, 624 (M.D.N.C. 2002); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002); Bratcher v. Pharm. Prod. Dev., Inc., 545 F. Supp. 2d 533, 539 (E.D.N.C. 2008); 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(1)(A). Here, plaintiff filed her EEOC charge on or about 30 July 2010. (Mot. Dismiss, Ex. A, DE # 22-1.) The EEOC charge clearly indicates that the specific discriminatory action that plaintiff complains of occurred on 16 June 2010, which was the date of her termination. (Id.) Plaintiff did not check the box for "Continuing Action." (Id.) Thus, the alleged discriminatory actions that took place in 2008 are outside of the relevant 180-day time period, and plaintiff may not maintain independent discrimination claims based on those actions. Accordingly, plaintiff's race and age discrimination claims will be dismissed to the extent that they are based on acts that occurred in 2008.[3]

Finally, the court considers the issue of whether plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted. The court finds that plaintiff's allegations are sufficient to give fair notice of what her claims are and the grounds upon which they rest. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). As a result, plaintiff's claims will not be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[3] Although plaintiff cannot seek relief based on any 2008 occurrences, the court notes that the events could possibly be used as "background evidence in support of a timely claim." Morgan, 536 U.S. at 113.

C.     Motion for Summary Judgment

   1. Summary judgment standard

Summary judgment is proper only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be granted only in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." Haavistola v. Cmty. Fire Co. of Rising Sun, Inc., 6 F.3d 211, 214 (4th Cir. 1993). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court is required to draw all reasonable inferences in favor of the non-moving party and to view the facts in the light most favorable to the non-moving party. Id. at 255. The moving party has the burden to show an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The party opposing summary judgment must then demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. Anderson, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. Id. at 252. Furthermore, evidence that is "merely colorable" or "not significantly probative" will not suffice to defeat a motion for summary judgment. Id. at 249. Rather, if the adverse party fails to bring forth facts showing that "reasonable minds could differ" on a material point, then disposition by summary judgment is appropriate. Id. at 250; see also Teamsters Joint Council No. 83 v. Centra, Inc., 947

F.2d 115, 119 (4th Cir. 1991).

      2. Race and age discrimination claims

Because plaintiff has not brought forth any direct evidence of discrimination, her Title VII and ADEA discrimination claims must proceed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell Douglas framework, the plaintiff first must establish a *prima facie* case of discrimination. Id., 411 U.S. at 802. Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (citing Tx. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)). If the defendant succeeds in doing so, that will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case. See Stokes v. Westinghouse Savannah River Co., 206 F.3d 420, 429 (4th Cir. 2000) (citing Burdine, 450 U.S. at 255 n.10). The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253. In the end, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996) (citing Burdine, 450 U.S. at 253).

Assuming without deciding that plaintiff could establish a *prima facie* case of race and age discrimination within the McDonnell Douglas framework,[4] a legitimate, nondiscriminatory

---

[4] Both sides agree that this is a reduction in force case that is governed by the test articulated in Mitchell v. Data General Corp., 12 F.3d 1310 (4th Cir. 1993). (See Mem. Supp. Mot. Summ. J., DE # 27, at 14-15 & n.3; Mem. Opp'n Mot. Summ. J., DE # 31, at 6.) Pursuant to Mitchell, a *prima facie* case of discrimination may be established by showing that (1) the employee was a member of a protected class; (2) she was selected for discharge from a larger

8

reason for plaintiff's termination has been articulated. After looking carefully at every position within the County, Smitherman eliminated plaintiff's position as part of a reduction in force that was implemented due to financial concerns. (D. Smitherman Aff., DE # 24-1, ¶¶ 4-6, 8; C. Gibbs Aff., DE # 24-2, ¶¶ 12, 17.) The reduction in force was necessary because the Hyde County Board of Commissioners would not support a tax increase to balance the budget for the coming year. (Id.) Smitherman also implemented other necessary cost-cutting measures: discontinuing a program, consolidating departments, and reducing and discontinuing services provided by the County. (D. Smitherman Dep., DE # 24-5, at 24:10-25:2; 25:23-27:16.) Here, Smitherman's stated reasons for terminating plaintiff have been consistent and are undisputed. There is simply no evidence to rebut the fact that Smitherman undertook a reduction in force in conjunction with an overall plan to develop a workable budget for Hyde County.

Where, as in this case, the employer's burden of production is met, the "presumption of discrimination drops out of the picture," and plaintiff must prove that the legitimate, nondiscriminatory reason offered by the employer was merely a "pretext" for discrimination.

---

group of candidates; (3) she was performing at a level substantially equivalent to the lowest level of those of the group retained; and (4) the process of selection produced a residual work force of persons in the group containing some unprotected persons who were performing at a level lower than that at which she was performing. Id., 12 F.3d at 1315.

However, the test set forth in Mitchell applies to reduction in force cases where "the selection of employees for discharge is purportedly made on the basis of relative performance, even though all employees were meeting existing performance standards . . . ." Id. (emphasis in original). In the instant case, there is no evidence in the record to suggest that employee performance was ever a consideration in Smitherman's cost-cutting decisions. To the contrary, the record unequivocally reveals that Smitherman's decisions were based solely on the County's personnel needs and employee compensation without any reference to employee performance. Therefore, despite the parties' agreement with respect to this issue, the Mitchell test is inapplicable here. Rather, when the decision to terminate an employee is part of a reduction in force and is not based on the employee's job performance, a *prima facie* case of discrimination consists of showing that (1) the employee was in a protected class, (2) she was discharged, (3) she was performing satisfactorily at the time of discharge, and (4) "persons outside the protected . . . class were retained in the same position or . . . there was some other evidence that the employer did not treat [the class] . . . neutrally in deciding to dismiss the plaintiff." Herold v. Hajoca Corp., 864 F.2d 317, 319 (4th Cir. 1988); see also Blistein v. St. John's Coll., 74 F.3d 1459, 1470 & n.13 (4th Cir. 1996); Jordan v. Radiology Imaging Assocs., 577 F. Supp. 2d 771, 782-83 (D. Md. 2008).

9

Reeves, 530 U.S. at 143 (citation and internal quotation marks omitted). To satisfy this burden, plaintiff "must prove 'both that the reason was false, and that discrimination was the real reason' for the challenged conduct." Jiminez v. Mary Wash. Coll., 57 F.3d 369, 378 (4th Cir. 1995) (emphasis in original) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). This burden of demonstrating pretext now merges with plaintiff's ultimate burden of persuasion on the existence of intentional discrimination. Burdine, 450 U.S. at 256.

Plaintiff seeks to demonstrate the falsity of the proffered explanation for her termination through the affidavit of James Topping, who states that there was no need for the County to make any personnel cuts in 2010 because the "Hyde County contingency fund was over 30% more than required by law." (J. Topping Aff., DE # 31-5, ¶ 4; see also J. Topping Second Aff. & Ex. A, DE ## 48, 48-1; Compl., DE # 1, ¶ 14.) Such an argument is to no avail. Smitherman's stated reason for the reduction in force is undisputed, and whether it would have been wiser for him to use money from the contingency fund to resolve the County's budgetary problems is of no consequence. The court cannot consider whether the employer's actions were wise or accurate. See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (When an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, "it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." (citation and internal quotation marks omitted)); White v. W.R. Winslow Mem. Home, Inc., 211 F.3d 1266 (Table), No. 99-1781, 2000 WL 346497, at *2 (4th Cir. Mar. 15, 2000) ("The crucial issue in an ADEA action is an unlawfully discriminatory motive for a defendant's action, not the wisdom or folly of its business judgment."). The fact that Smitherman did not consider some other action over the course he

10

ultimately took does not demonstrate that the reason given for the termination decision was not true.

In an attempt to establish pretext, plaintiff also contends that the members of the Hyde County Board of Commissioners ("Board") were "directly involved" in the decision to terminate her. (Mem. Opp'n Mot. Summ. J., DE # 31, at 9 n.1.) She further claims that two of the members of the Board, Tom Davis ("Davis") and Sharon Spencer ("Spencer"), are racially prejudiced. (See id. at 9; P. Sawyer Aff., DE # 31-3, ¶ 8; P. Sawyer Second Aff., DE # 49.)

Even assuming the latter assertion to be true, plaintiff cannot prevail. There is no evidence that Davis or Spencer made the decision to terminate plaintiff. To the contrary, the record shows that the decision to eliminate plaintiff's position was made solely by Smitherman. (D. Smitherman Aff., DE # 24-1, ¶¶ 5, 13; D. Smitherman Dep., DE # 24-5, at 29:4-31:8; C. Gibbs Aff., DE # 24-2, ¶ 11.) Although plaintiff asks the court to infer that one of the Board members, Anson Byrd, made a recommendation to Smitherman regarding which employees should be terminated, the evidence that plaintiff offers in support of this inference is inadmissible hearsay. (See P. Sawyer Aff., DE # 31-3, ¶ 6; P. Sawyer Second Aff., DE # 49.) Even if the evidence were admissible, it would not establish that the allegedly racist members of the Board participated in the decision to terminate plaintiff.[5] Thus, because plaintiff has failed to produce any evidence to show that Davis or Spencer was "the actual decisionmaker or was

---

[5] Furthermore, plaintiff's allegation that "a list of which employees were going to be fired was out on the street and the subject of public discussion weeks before the dismissals took place" also does not establish that the allegedly racist Board members participated in the decision to terminate plaintiff. (Mem. Opp'n Mot. Summ. J., DE # 31, at 9.)

11

otherwise principally responsible for the termination decision[,]"[6] their alleged racial bias is insufficient as a matter of law to establish an inference of discrimination actionable under Title VII. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 298 (4th Cir. 2004).

Plaintiff has also offered affidavits from several witnesses who "are convinced that racism contributed to [plaintiff's] dismissal, and have provided evidence in support of their opinions." (Mem. Opp'n Mot. Summ. J., DE # 31, at 9.) However, the opinions of these witnesses are vague and appear to be based on nothing more than speculation and conjecture. (See, e.g., L. Byrd Aff., DE # 31-1, ¶ 3 ("I do not believe that the dismissal of Ms. Gibbs was fair. Racism played a part in this dismissal, in my opinion. Ms. Gibbs was passed over for raises."); M. Spencer Aff., DE # 31-4, ¶ 4 ("Race certainly played a part in the dismissal of Ms. Gibbs. She was overlooked for appreciation and recognition. She was paid less than she should have been."); P. Sawyer Second Aff., DE # 49 (Board member Davis "gives preferential treatment to white people, and he is indifferent toward people of color. This has been obvious to me on a daily basis.").) Furthermore, the fact that Smitherman, Basnight, and members of the Board were arrogant and may have talked down to plaintiff or may have been rude to her simply does not show that any of these individuals were motivated by a discriminatory animus. (See M. Spencer Aff., DE # 31-4, ¶ 5.)

Plaintiff's evidence of pretext with regard to her age discrimination claim is also weak. Plaintiff was 61 years old and Gurganus was 57 years old at the time that Gurganus was hired as

---

[6] Plaintiff has stated that she cannot provide the evidence necessary to support her claim because her request for production of "recordings and transcripts of the county commissioners' deliberations on personnel matters" was objected to, and the requested items were not produced. (Mem. Opp'n Mot. Summ. J., DE # 31, at 9 n.1.) However, if plaintiff believed that the discovery responses she received were inadequate, she should have filed a motion to compel under Federal Rule of Civil Procedure 37 during the discovery period.

12

the Tax Clerk. (Compl., DE # 1, ¶ 6; S. Gurganus Aff., DE # 24-3, ¶ 9.) The fact that plaintiff's duties were assumed by a person who was only four years younger than she and who was also in the protected class is insufficient to establish an inference of discrimination. See, e.g., O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 313 (1996) (no inference of age discrimination can be drawn "from the replacement of one worker with another worker insignificantly younger"); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 512 (4th Cir. 1994) ("In a reduction of work force case, the fact that the duties of a terminated older employee were assumed by a younger individual is not conclusive of age bias.").

Plaintiff's only evidence of age discrimination appears to relate to her thirty-two years of experience in the tax office and her exemplary work performance. (See, e.g., Mem. Opp'n Mot. Summ. J., DE # 31, at 4-5, 11-12; Pl.'s Dep., DE # 24-4, at 41:2-11; Pl.'s Aff., DE # 31-2, ¶¶ 5, 13; L. Byrd Aff., DE # 31-1, ¶ 2; P. Sawyer Aff., DE # 31-3, ¶¶ 2-3; M. Spencer Aff., DE # 31-4, ¶ 3.) At bottom, plaintiff's argument boils down to her subjective belief that she was the most qualified person for the new Tax Clerk position, which is insufficient as a matter of law to establish pretext. See, e.g., Evans, 80 F.3d at 960-61 ("It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." (citation and internal quotation marks omitted)); Southmayd v. Apria Healthcare, Inc., 412 F. Supp. 2d 848, 857 (E.D. Tenn. 2006) (plaintiff's conclusory opinion that he was better qualified than another employee who was retained in a reduction in force was insufficient to establish age discrimination).

The court further finds that plaintiff's arguments regarding her qualifications for the Tax Clerk position are irrelevant because she withdrew her application for the position before it was filled by accepting the Early Retirement and Incentive Plan. Although plaintiff insists that she

13

did not withdraw her application (Pl.'s Aff., DE # 31-2, ¶ 11), this factual dispute is not a genuine one. While plaintiff may not have formally removed herself as a candidate for the new position, she does not dispute that she asked whether the early retirement option was still available to her after the election deadline had passed or that she signed the early retirement paperwork before the Tax Clerk position was filled.[7] (See, e.g., Mot. Dismiss, Ex. A., DE # 22-1 (Plaintiff's EEOC charge stated: "Instead of competing for the position, I choose [sic] to accept the offer for early retirement."); D. Smitherman Aff., DE # 24-1, ¶¶ 9, 11; C. Gibbs Aff., DE # 24-2, ¶ 14; S. Gurganus Aff., DE # 24-3, ¶ 7; Pl.'s Dep., DE # 24-4, at 57:21-58:24; 66:16-67:3; 79:3-6.) In addition, plaintiff does not argue that the County had any further obligation to consider her application once she signed the retirement paperwork. Thus, Gurganus, who was the only other applicant for the Tax Clerk position, received the job only after plaintiff elected to take early retirement.[8] Because plaintiff signed the early retirement paperwork before a new Tax Clerk was hired, her failure to receive the position cannot be attributed to discrimination.

Plaintiff's overarching argument in this case is that the reduction in force was a "sham" implemented by the County in order to eliminate plaintiff's job. (Pl.'s Dep., DE # 24-4, at 80:4-18.) However, it defies reason to think that the County orchestrated the termination of eight

---

[7] Plaintiff argues that she signed the early retirement paperwork "under great duress" because she felt she "had no choice in the matter[.]" (Pl.'s Aff., DE # 31-2, ¶ 3.) Plaintiff felt this way because "a number of people including county employees" told her that she was not going to get the new position. (Id. ¶ 11.) Plaintiff speculates that she would not have gotten the new position, and she tries to offer this speculation as proof that the hiring process was a sham. However, plaintiff's evidence with respect to this issue is entirely too tenuous to create a genuine dispute of material fact as to whether it was futile for her to remain in the applicant pool or whether her signing of the paperwork was voluntary.

[8] This series of events also undercuts plaintiff's pretext-related argument that "[t]hree of the dismissed employees, all of them Caucasian, were hired back within days or weeks following the reduction in force." (Mem. Opp'n Mot. Summ. J., DE # 31, at 8; see also id. at 5-6; Pl.'s Aff., DE # 31-2, ¶ 8.) One of the white employees who was hired back was Gurganus. However, the hiring of Gurganus as Tax Clerk does not support a finding of pretext because plaintiff's signing of the early retirement paperwork left Gurganus as the only remaining applicant for the position.

14

employees in order to rid itself of plaintiff. Cf. Birkbeck, 30 F.3d at 512 (noting the district court's finding that it would make little sense for the employer to shut down an entire twelve-person department simply to rid itself of that department's sixty-two-year-old supervisor). The court concludes that plaintiff has failed to provide sufficiently probative evidence to indicate that she was singled out for dismissal because of her race or her age. The record in this case is devoid of evidence that the decision to terminate plaintiff was motivated by a discriminatory animus. Therefore, plaintiff's race and age discrimination claims must be dismissed.[9]

    3. Retaliation claim

Plaintiff has also asserted an ADEA retaliation claim relating to the termination of her employment on 16 June 2010. See 29 U.S.C. § 623(d). Because plaintiff has not brought forth any direct evidence of retaliation, her claim must proceed under the burden-shifting McDonnell Douglas framework. Plaintiff must first establish a *prima facie* case of retaliation. The elements of a retaliation claim are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the adverse action. See Laber v. Harvey, 438 F.3d 404, 432 (4th Cir. 2006).

Here, plaintiff appears to concede that summary judgment is appropriate on the retaliation claim because she has failed to respond to the arguments raised with respect to this issue in the memorandum in support of the motion for summary judgment. See, e.g., Bayer Schering Pharma AG v. Watson Pharms., Inc., Nos. 2:07-CV-01472-KJD-GWF, 2:08-CV-00995-KJD-GWF, 2012 WL 1079574, at *7 (D. Nev. Mar. 30, 2012) (failure to oppose

---

[9] Because of this determination, the court has not considered the alternate argument made in support of the motion for summary judgment that plaintiff's race discrimination claim is barred because she executed a valid and binding release agreement. (See Mem. Supp. Mot. Summ. J., DE # 27, at 10-14.)

15

movant's argument in brief opposing motion for summary judgment implicitly concedes the argument (citing S. Nev. Shell Dealers Ass'n v. Shell Oil Co., 725 F. Supp. 1104, 1109 (D. Nev. 1989)); Klugel v. Small, 519 F. Supp. 2d 66, 72 (D.D.C. 2007) ("[W]hen a party does not address arguments raised by a movant, the court may treat those arguments as conceded."). Regardless, the court finds that plaintiff has failed to demonstrate that she engaged in any form of protected activity prior to her termination on 16 June 2010. Thus, plaintiff's retaliation claim must also be dismissed.

D.  Motions to Strike

Also before the court are two motions to strike portions of several affidavits submitted by plaintiff in opposition to the motion for summary judgment. The court finds that the portions of the affidavits at issue are insufficient to create a material factual dispute for the purposes of summary judgment. As a result, the court need not consider the alleged impropriety of the affidavits under Federal Rule of Civil Procedure 56 or any other issues raised in the motions to strike. Thus, the motions will be denied as moot.

### III.  CONCLUSION

For the foregoing reasons, plaintiff's motion to substitute Hyde County as the defendant in this action (DE # 30) is GRANTED. The motion to dismiss (DE # 22) is GRANTED IN PART and DENIED IN PART, and plaintiff's race and age discrimination claims are DISMISSED to the extent they are based on acts that occurred in 2008. The motion for summary judgment (DE # 24) is GRANTED. The motions to strike (DE ## 39, 50) are DENIED AS MOOT.

The Clerk is DIRECTED to substitute defendant Hyde County, North Carolina for David

16

Smitherman, Sharon Spencer, George Thomas Davis, Darlene Styron, Anson Byrd, and Ken Collier. The Clerk is further DIRECTED to enter judgment in favor of Hyde County and close this case.

This 7 December 2012.

                                            W. Earl Britt
                                            Senior U.S. District Judge